**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

In Re: RARE EARTH MINERALS,
                                *Debtor.*

---

MARY HAZELBAKER,
                *Creditor-Appellant,*

v.

HOPE GAS, INCORPORATED; DOMINION
FIELD SERVICES, INCORPORATED;
TRI-COUNTY OIL AND GAS,
INCORPORATED,
                *Creditors-Appellees,*

STEPHEN L. THOMPSON,
                *Trustee-Appellee,*

v.

DEBRA A. WERTMAN; DODDRIDGE
COUNTY COMMISSION; LUCILLE
WAGONER; THOMAS WAGONER;
MICHAEL L. BIALEK; SARA C.
MULLINS; STEPHEN E. MULLINS;
CLARENCE E. SIGLEY, Trustee of the
Carolyn E. Farr Trust,
                *Parties-in-Interest.*

No. 04-2526

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, Chief District Judge.
(CA-04-156-1)

Argued: March 15, 2006

Decided: April 18, 2006

Before WILKINSON, NIEMEYER, and DUNCAN, Circuit Judges.

---

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Judge Duncan joined.

---

**COUNSEL**

**ARGUED:** Judy L. Shanholtz, MCNEER, HIGHLAND, MCMUNN & VARNER, L.C., Clarksburg, West Virginia, for Appellant. Stephen L. Thompson, BARTH & THOMPSON, Charleston, West Virginia, for Appellees. **ON BRIEF:** James A. Varner, Robert W. Trumble, MCNEER, HIGHLAND, MCMUNN & VARNER, L.C., Clarksburg, West Virginia, for Appellant. Francis L. Warder, Jr., Fairmont, West Virginia, for Appellees.

---

**OPINION**

WILKINSON, Circuit Judge:

In this case we consider the "statutory mootness" of an appeal challenging a bankruptcy court's authorization of the assumption and sale of an oil and gas lease. Section 363(m) of the Bankruptcy Code, 11 U.S.C. § 363(m) (2000), curtails the power of appellate courts to undo the authorized sale of estate assets to a good faith purchaser unless the sale has been stayed pending appeal. Plaintiff here failed to obtain such a stay, and the district court consequently dismissed her appeal

as moot. We affirm, because to hold otherwise would undercut § 363(m)'s express concern with the finality of bankruptcy sales.

I.

Plaintiff Mary Hazelbaker owns an undivided fractional interest in the oil and gas located on certain West Virginia property. In 1982, her predecessors in interest leased these rights in an agreement that came to be assigned to Rare Earth Minerals, Inc. The terms of the lease required Rare Earth to make royalty payments on whatever oil or gas was produced or sold, or to pay a "'shut-in' royalty" of $300 per year for each well producing gas that was not sold, marketed, or used off the premises. Hazelbaker asserts that as of 1995, Rare Earth ceased paying her either type of royalty. In 2001, believing Rare Earth to have abandoned the lease, she re-leased the oil and gas rights to a third party, and notice to this effect was filed in the county records.

On August 19, 2002, Rare Earth filed for Chapter 11 bankruptcy protection. Stephen L. Thompson is the trustee of the estate. On June 9, 2003, the trustee moved for approval to assume the Hazelbaker lease into the estate. *See* 11 U.S.C. § 365(a) (2000). On June 23, Hazelbaker lodged an objection. She requested that the bankruptcy court partially lift the automatic stay that accompanies bankruptcy filings, *see* 11 U.S.C. § 362(a)(1), (d), to allow her to petition a state court for a judgment that the lease had been abandoned. In the alternative, she requested that the bankruptcy court itself adjudicate the issue of state-law abandonment. The bankruptcy court held a hearing on her motion four days after it was filed, but did not resolve the abandonment question, instead granting the parties' request for a continuance so that they could negotiate. A status conference on July 15 resulted in another continuance for negotiation.

The automatic stay ended of its own accord thirty days after the filing of Hazelbaker's motion, *see* 11 U.S.C. § 362(e), but at no time did Hazelbaker ever file suit in state court or request an adversary proceeding in the bankruptcy court. Two further status conferences were held on October 22 and November 17, 2003, during which the trustee notified the court that he was close to finding a purchaser for the assets of the estate. After the November 17 conference, Hazelbaker and the trustee did not communicate for nearly half a year.

On April 24, 2004, the trustee petitioned the bankruptcy court for approval to, inter alia, assume and sell Rare Earth's leases to Tri-County Oil and Gas, Inc. As provided under 11 U.S.C. § 365(b)(1)(A), the motion included a proposal to pay a "cure" amount to various landowners — including Hazelbaker — to whom Rare Earth owed payments. The court served a notice of sale on Hazelbaker, informing her that the proposed cure amount for her lease was $444.85. On May 11, 2004, Hazelbaker sent the trustee a letter proposing that the cure amount be increased to $2800. On June 2, 2004, she filed an objection to the trustee's sale motion, in which she again asserted her abandonment argument. But, according to the district court, she did not request an adversary hearing or file a proof of claim. In a letter dated June 4, 2004, the trustee formally accepted Hazelbaker's proposal to increase the cure amount to $2800.

On June 18, 2004, the bankruptcy court issued an order approving the assumption of leases under 11 U.S.C. § 365 and authorizing the sale of estate assets to Tri-County pursuant to 11 U.S.C. §§ 105 and 363(b), (f), and (m). The order was subsequently amended on June 24, 2004. In both the original and amended versions, the court ordered that

> should an appeal of this Order be filed, Tri-County shall be entitled to the benefits of 11 U.S.C. 363(m) and . . . the Trustee and Tri-County may proceed with closing notwithstanding any such appeal, unless a stay pending appeal has been issued and is in effect at the time of such closing.

Both orders further stated that Tri-County was "acquiring the Assets in good faith and is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) . . . and is entitled to the protection provided therein."

On June 28, 2004, Hazelbaker filed a notice of appeal and sought from the bankruptcy court a stay of the sale pending appeal. She did not seek an expedited hearing on the stay request, and in fact requested a continuance from the original hearing date set by the bankruptcy court. As a result, the hearing was set for July 12, eleven days after the sale had already been finalized in accordance with the court-approved schedules. At the hearing, the bankruptcy court denied

Hazelbaker's motion. As part of the completion of the sale, the trustee paid the $2800 cure amount to Hazelbaker, though she claims she has not yet deposited the check.

Hazelbaker appealed to the district court, contending that the bankruptcy court violated her rights by approving the assumption and sale of the lease without formally adjudicating her state-law abandonment claim. The trustee moved to dismiss, arguing that the failure to obtain a stay rendered the appeal moot under § 363(m). The district court granted the trustee's motion. In both its original order and a second order denying Hazelbaker's motion for rehearing, the district court rejected Hazelbaker's arguments that her abandonment claim be heard on the merits and that Tri-County was a bad faith purchaser unentitled to the protections of § 363(m). The district court stated that Hazelbaker's "request that this Court now find that her lease was abandoned under West Virginia law, or to reverse the bankruptcy judge's sale order, flies in the face of uncontested evidence that Tri-County was a good faith purchaser."

Hazelbaker appeals.

## II.

In full, 11 U.S.C. § 363(m) provides that:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

This subsection creates a rule of "'statutory mootness.'" *See L.R.S.C. Co. v. Rickel Home Ctrs., Inc.* (*In re Rickel Home Ctrs., Inc.*), 209 F.3d 291, 298 (3d Cir. 2000). Where a sale of a bankrupt's assets has not been stayed, an appeal challenging the sale's validity is moot because "the court has no remedy that it can fashion even if it would

have determined the issues differently." *Anheuser-Busch, Inc. v. Miller* (*In re Stadium Mgmt. Corp.*), 895 F.2d 845, 847 (1st Cir. 1990) (collecting cases); *see also In re Vlasek*, 325 F.3d 955, 961-62 (7th Cir. 2003) (same). Thus, even if the bankruptcy court erred in authorizing the sale, the appeal must be dismissed. *See, e.g.*, *Canzano v. Ragosa* (*In re Colarusso*), 382 F.3d 51, 62 (1st Cir. 2004).

Section 363(m) codifies Congress's strong preference for finality and efficiency in the bankruptcy context, particularly where third parties are involved. *See In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986). Without the protection of § 363(m), purchasers of bankruptcy estate assets could be "dragged into endless rounds of litigation to determine who has what rights in the property." *In re Sax*, 796 F.2d 994, 998 (7th Cir. 1986). This would not only impose unfair hardship on good faith purchasers, but would also substantially reduce the value of the estate. *See, e.g.*, *In re CGI Indus., Inc.*, 27 F.3d 296, 299 (7th Cir. 1994). An asset that provides a near-certain guarantee of litigation and no guarantee of ownership is likely to have a low sale price; by removing these risks, § 363(m) allows bidders to offer fair value for estate property. *See Licensing by Paolo, Inc. v. Sinatra* (*In re Gucci*), 126 F.3d 380, 387 (2d Cir. 1997); *Seaboard Sys. R.R. v. United States* (*In re Chi., Milwaukee, St. Paul & Pac. R.R. Co.*), 799 F.2d 317, 330 (7th Cir. 1986). This in turn, of course, greatly benefits both the debtor and its creditors.

Section 363(m) hardly represents a harsh means for achieving these important ends. It does not, of course, interfere with a claimant's ability to have her claim adjudicated by the bankruptcy court. Nor, for that matter, does it preclude the possibility of an appeal. It simply requires that the claimant request, and be granted, a stay of the sale pending the appeal. Requesting such a stay is in the claimant's own best interest: a stay keeps the disputed property within the jurisdiction of the bankruptcy court, *see, e.g.*, *Wintz v. Am. Freightways, Inc.* (*In re Wintz Cos.*), 219 F.3d 807, 811 (8th Cir. 2000), and it forestalls the transactional complexities that arise if the sale to a third party is completed prior to a final resolution of the claim. But in allowing for the possibility that the stay may not be granted, § 363(m) recognizes that the claimant's interests are not the only ones at stake. For example, a strong "public policy interest in . . . the swift and efficient administration of the bankrupt's estate," *Scott v. Nat'l Century Fin. Enters.*

(*In re Balt. Emergency Servs. II, Corp.*), 432 F.3d 557, 560 (4th Cir. 2005) (internal quotation marks omitted), may in certain cases outweigh the claimant's desire for a second bite at the apple on appeal.

## III.

The bankruptcy court approved the sale of Hazelbaker's lease to Tri-County pursuant to 11 U.S.C. § 363(b), and Hazelbaker has failed to obtain a stay of the sale pending appeal. Section 363(m) would end the matter there, but for two arguments Hazelbaker now raises as to why it ought not to apply. We shall address each in turn.

## A.

Hazelbaker first contends that she falls within an implicit exception to § 363(m). Citing the Ninth Circuit's decision in *Mann v. Alexander Dawson Inc.* (*In re Mann*), 907 F.2d 923, 926 (9th Cir. 1990), she argues that the statutory mootness rule does not apply in circumstances where state law would allow a sale to be set aside.

As a threshold matter, we are unable to locate this exception in the text of the statute itself, which "states a flat rule governing all appeals of section 363 authorizations." *Cargill, Inc. v. Charter Int'l Oil Co.* (*In re Charter Co.*), 829 F.2d 1054, 1056 (11th Cir. 1987) (per curiam). Indeed, the exception would appear to undermine the finality that § 363(m) expressly seeks to create. While the statute erects a dam to staunch the tide of post-sale litigation, the exception creates a leak through which the appeals of clever litigants may continue to flow.

But even if this exception were somehow implicit in the statute, Hazelbaker seriously misconstrues its scope in arguing that it would apply here. The Ninth Circuit does not permit § 363(m) to be avoided any time a claimant has a state-law property claim, but instead limits the exception to circumstances where the claimant "has the right under [state] law to set aside a foreclosure sale after the sale has taken place, after deeds have been recorded, and after the property has been sold to a third party." *Rosner v. Worcester* (*In re Worcester*), 811 F.2d 1224, 1228 (9th Cir. 1987); *see also In re Mann*, 907 F.2d at 926. Hazelbaker does not even attempt to show that she is entitled to a set-

aside remedy under West Virginia law. To be sure, she argues that the trustee had no right to assume her lease into the estate, because Rare Earth had abandoned it or it had otherwise terminated. But even if she were correct on this point, she does not demonstrate that this would provide an adequate basis under state law for setting aside an already completed foreclosure sale.

To recognize an exception to statutory mootness whenever a claimant asserts that her property was wrongly assumed into the estate "would seriously undermine the purpose of § 363(m) and could destroy the rule altogether." *In re Sax*, 796 F.2d at 998. Such claims are commonplace, and the entire point of § 363(m) is to ensure that they are resolved prior to the completion of the sale. Indeed, we have previously dismissed as moot an appeal very similar to the one here, in which the claimant contended that a debtor's lease had terminated and thus should not have been sold to a third-party purchaser. *See Dev. Co. of Am. v. Adamson Co. (In re Adamson Co.)*, 159 F.3d 896, 897-98 (4th Cir. 1998). We see no reason to reach a different result here.

B.

Hazelbaker next contends that § 363(m) is inapplicable because Tri-County is not "an entity that purchased . . . in good faith." *See, e.g.*, *Willemain v. Kivitz (In re Willemain)*, 764 F.2d 1019, 1023-24 (4th Cir. 1985) (addressing good faith question on appeal to determine applicability of § 363(m)). She argues that the recordation of a second oil and gas lease on her property — the one she entered into in 2001 after unilaterally determining that Rare Earth's rights had been abandoned — demonstrates Tri-County's bad faith in purchasing Rare Earth's lease.

Addressing the good faith question in the first instance, the bankruptcy court determined that Tri-County was "acquiring the Assets in good faith and is a good faith purchaser within the meaning of 11 U.S.C. § 363(m)." In a hearing before the district court on appeal, Hazelbaker appears to have mentioned for the first time the existence of the second lease. Following that hearing, the district court issued an order dismissing Hazelbaker's appeal as moot, noting that her request for relief "flies in the face of uncontested evidence that Tri-

County was a good faith purchaser." Undeterred, Hazelbaker sought rehearing in the district court, again broaching the topic of the second lease. Though the district court considered the second-lease issue to be a "new argument," its opinion denying the motion for rehearing addressed the argument on the merits and found it "insufficient to infer bad faith."

As a threshold matter, Hazelbaker may well have waived the second-lease argument by her apparent failure to raise it to the bankruptcy court, despite having known of it since well before the inception of the proceedings. *See Lane v. Sullivan* (*In re Lane*), 991 F.2d 105, 107 (4th Cir. 1993) (noting that failure to raise an issue before bankruptcy court waives it on appeal); *see also Ginther v. Ginther Trusts* (*In re Ginther Trusts*), 238 F.3d 686, 689 (5th Cir. 2001) (per curiam) (declining to review good faith where plaintiff had not challenged it before the bankruptcy court); *Gilchrist v. Westcott* (*In re Gilchrist*), 891 F.2d 559, 561 (5th Cir. 1990) (same). But even if the argument is preserved, we find no reason to overturn the good faith determinations made by both lower courts.

Moreover, were we to find for Hazelbaker here, we would hardly be furthering Congress's interest in the prompt resolution of bankruptcy proceedings. At any point, Hazelbaker could have easily advised the trustee or Tri-County of the existence of the second lease. Yet she apparently did not do so until nearly four months after the estate sale was finalized. By keeping her cards hidden, Hazelbaker was able to play both sides and hedge her bets. On the one hand, the assumption of her lease into the estate would entitle her to cure payments, *see* 11 U.S.C. § 365(b)(1)(A), obviating the need for her to seek the unpaid royalties through the less certain mechanisms available to other creditors. Hazelbaker promptly took advantage of this to negotiate a sixfold increase in her guaranteed share of the profits of the estate sale. On the other hand, she simultaneously sought to keep alive the inconsistent claim that the lease had reverted back to her. To this end, she weakly pursued an objection to the assumption of the lease: repeatedly requesting continuances and passively allowing the substance of her claim to remain unadjudicated. Despite ample time, she never filed an action in state court, requested an adversary hearing in the bankruptcy court, or informed the trustee of the competing lease. However aggressively she may press her claims now, the win-

dow of opportunity has closed, as the clear statutory dictates of § 363(m) render her appeal moot.

## IV.

For the foregoing reasons, the judgment of the district court dismissing Hazelbaker's appeal as moot is

*AFFIRMED*.