2026 UT App 55

# THE UTAH COURT OF APPEALS

ZANE BOYLE AND SHANA BOYLE,
Appellees,
*v.*
JOSHUA LARRY BAUM AND BAUMHAUS LLC,
Appellants.

Opinion
No. 20250164-CA
Filed April 9, 2026

Fourth District Court, Spanish Fork Department
The Honorable Jared Eldridge
No. 210300151

Dusten L. Heugly, Attorney for Appellants

Brady T. Gibbs, Attorney for Appellees

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and
DAVID N. MORTENSEN concurred.

LUTHY, Judge:

¶1 Zane and Shana Boyle entered a contract to purchase a home that Joshua Larry Baum and his company, Baumhaus LLC, were in the process of building.[1] Disputes arose under the contract, and litigation ensued. Eventually, in response to the Boyles' motion for summary judgment, the district court ordered specific performance of the contract. The parties complied by closing on the sale—with Baum receiving payment and the Boyles

---

1. For convenience, we refer to Joshua Larry Baum and Baumhaus LLC interchangeably as "Baum." We generally refer to the Boyles collectively. When we refer to only one of them, we use their first names, with no disrespect intended by the apparent informality.

taking ownership and possession of the home—all before a final judgment was entered. After a final judgment was entered, Baum appealed, challenging the summary judgment ruling.

¶2      The Boyles have filed a motion to dismiss the appeal on the basis that the appeal is moot. Their motion is well taken. We conclude that because Baum accepted the Boyles' money and conveyed the home subject to no reservation of rights, protest, or attempt to preserve the status quo pending appeal, the appeal is moot. We therefore lack jurisdiction and must dismiss the appeal.

BACKGROUND

¶3      In early 2021, the Boyles contacted Baum about purchasing a single-family residence Baum was in the process of building (the Property). Shortly thereafter, the Boyles and Baum entered into a real estate purchase contract (REPC) for the Property.

¶4      After the settlement deadline identified in the REPC passed without construction being completed, the parties agreed to a later settlement deadline. The home was still not completed by the later date, and after that new closing date passed, Baum told the Boyles they were in breach and would need to agree to a higher purchase price or he would cancel the REPC. The Boyles refused to pay more, and Baum sent them a letter purporting to cancel the REPC.

¶5      The Boyles sued Baum, and Baum counterclaimed. Both sides alleged breach of contract, among other things. The Boyles then moved for summary judgment on Baum's claims, and the district court granted their motion, issuing an order on February 6, 2024, which required specific performance of the REPC within thirty days. Due to the need to still resolve other, outstanding issues in the litigation—including motions for attorney fees and for damages incidental to specific performance—the court did not

enter a judgment at that time.[2] It eventually entered a judgment on January 15, 2025, in favor of the Boyles, including for their attorney fees and costs.

¶6    Baum filed his notice of appeal on February 13, 2025. Thereafter, the Boyles filed a suggestion of mootness and motion to dismiss the appeal.

¶7    In support of their suggestion of mootness and motion to dismiss, the Boyles submitted a declaration from Zane, who declared that after the court issued its order granting the Boyles' summary judgment motion, the Boyles and Baum "began communicating"—largely through their attorneys—"regarding a closing date, additional addenda to the [REPC], the final purchase price, and agreed-upon upgrades which would be included." Zane further declared, "[O]n March 4, 2024, [Baum's counsel] provided a letter to our attorney indicating that [Baum] 'is providing confirmation [that] he will close [on the Property] as required by the [c]ourt [o]rder.'" Additionally, Zane stated that the Boyles had attended settlement, executed all required closing documents, and paid the agreed purchase price; that Baum had transferred title to the Property to the Boyles via warranty deed; and that the Boyles had taken possession of the Property in March 2024 "and have occupied it ever since."

¶8    The letter from Baum's counsel was attached as an exhibit to Zane's declaration. The letter did not indicate that the sale of the Property would be subject to any reservation of rights or that Baum was complying with the court's order under protest or while anticipating filing a future appeal. The warranty deed was

---

2. Because the court's summary judgment order did not "adjudicate[] all claims and the rights and liabilities of all parties," it was not a "[j]udgment" under rule 54(a) of the Utah Rules of Civil Procedure "from which an appeal of right lies."

also attached as an exhibit, and it likewise conveyed the Property to the Boyles without a reservation of rights.

¶9     Baum has not contested the facts set forth in Zane's declaration or the authenticity of the documents attached to it.

ISSUE AND STANDARD OF REVIEW

¶10     Baum contends that the district court improperly granted the Boyles' motion for summary judgment. "We would ordinarily review this ruling for correctness. But because we conclude that the issues raised in [this] appeal are moot, we lack judicial power to address them." *Bywater v. Brigham City Corp.*, 2024 UT App 53, ¶ 17, 548 P.3d 531 (cleaned up), *cert. denied sub nom., Brigham City v. Bywater*, 554 P.3d 987 (Utah 2024).

ANALYSIS

¶11     "An appeal is moot if during the pendency of the appeal circumstances change so that the controversy is eliminated, thereby rendering the relief requested impossible or of no legal effect." *Bywater v. Brigham City Corp.*, 2024 UT App 53, ¶ 21, 548 P.3d 531 (cleaned up), *cert. denied sub nom., Brigham City v. Bywater*, 554 P.3d 987 (Utah 2024). "Mootness does not provide the court with a choice of whether to proceed with an appeal or not; it is jurisdictional." *Id.* (cleaned up).

¶12     Our supreme court has long held that when a party complies with a judgment ordering the transfer of real property in exchange for consideration without an attempt to preserve the status quo or an expression of non-acquiescence in the transaction, then the completed transaction renders moot the appellate issues that might otherwise have arisen from the judgment. *See Trees v. Lewis*, 738 P.2d 612, 613 (Utah 1987); *Black v. Alpha Fin. Corp.*, 656 P.2d 409, 410 (Utah 1982).

¶13 In *Black v. Alpha Financial Corp.*, 656 P.2d 409 (Utah 1982), a buyer and two sellers entered a contract "for the sale and purchase of a shopping center." *Id.* at 410. After paying on the contract for a time, "the buyer became delinquent in its payments," and the sellers served a notice "giving the buyer [five] days to bring the payments current or to suffer a forfeiture of all payments made to date on the contract, as well as repossession of the premises by the seller[s]." *Id.* "The buyer did not cure the default to the satisfaction of the sellers," and the sellers sued. *Id.* "Following a trial . . . , [the] sellers were awarded a judgment forfeiting the buyer's interest in the contract and restoring possession of the real property to the sellers," subject "to the right of the buyer to remedy its default and prevent forfeiture and repossession by paying to the sellers within 30 days the entire unpaid balance of the contract, together with all accrued interest, attorney[] fees and court costs." *Id.*

¶14 "The buyer availed itself of the opportunity afforded by the trial court and paid the balance of the contract and received a conveyance of the property." *Id.* The buyer then appealed, contending that the "sellers did not afford him proper notice of the forfeiture, that [the] sellers waived their right to claim a forfeiture, that the court improperly dismissed one of the buyer's affirmative defenses, and that the sellers did not sustain their burden of proof at the trial." *Id.*

¶15 Our supreme court dismissed the appeal as moot, explaining as follows:

> [T]he case has been rendered moot by the action of the buyer in paying the sellers the balance of the purchase price. The sellers no longer have any interest in the property. The buyer is the owner. Even if we were to agree with one or more of the buyer's contentions, there is no relief that we could afford the buyer since he has paid the full purchase

price and completely extinguished the sellers'
interest in the property. We cannot revive the
contract and reinstate the parties to their original
positions. At the time the judgment below was
entered, the buyer, without complying with the
judgment, could have brought an appeal to this
[c]ourt after posting any necessary supersedeas
bond. Had that been done, the controversy between
the parties would still be alive on appeal. Since the
buyer did not take that route but instead paid the
contract balance and received a conveyance of the
property, all controversy between the parties was
settled and mooted.

*Id.*

¶16　The case of *Trees v. Lewis*, 738 P.2d 612 (Utah 1987), is
similar, except that in *Trees* it was—as here—a seller who
appealed after complying with an order requiring him to convey
property. *See id.* at 612. That case involved litigation under a
contract for the sale of a ranch. *See id.* Following a trial, "the trial
court ordered [the] seller to convey the ranch to [the] buyer and
to set up a payment schedule under which [the] buyer was to
make payments to [the] seller." *Id.* at 613. The seller "did not file
a supersedeas bond as permitted" by the rules of civil procedure;
"rather, [the] seller moved off the ranch and cashed over $70,000
in checks tendered by [the] buyer, noting on the checks that he did
so in order to collect interest on the money." *Id.* The seller then
appealed from the "judgment requiring him to specifically
perform [the] contract." *Id.* at 612.

¶17　Our supreme court held that "by giving up possession of
the property and accepting the money tendered by [the] buyer,
[the] seller [had] waived his right to appeal." *Id.* at 613 (cleaned
up). The court explained that "as a general rule, one who accepts
a benefit under a judgment is estopped from later attacking the

judgment on appeal, and one who acquiesces in a judgment cannot later attack it." *Id.* (cleaned up). The court then articulated, as follows, the rationale behind this "acceptance-of-benefits doctrine":

> An appellant who accepts the benefits of a judgment from which he [or she] is appealing accomplishes a significant shift in the burden of risk; he [or she] exposes the respondent to the possibility not only of a possible loss on appeal, but also the potential loss of the benefit he [or she] has provided to the appellant. For example, in this case, [the] seller has taken over $70,000 of [the] buyer's money which, should we reverse on appeal, [the] buyer would have to recover from [the] seller, who may not be able or willing to refund it. Further, [the] seller has allowed [the] buyer to inconvenience himself by moving to the ranch and hiring a staff.

*Id.*

¶18 Consistent with *Black* and *Trees*, we have recently stated that "a party's failure to obtain a stay of a lower court judgment may become material to the question of mootness." *Bywater v. Brigham City Corp.*, 2024 UT App 53, ¶ 27, 548 P.3d 531 (cleaned up), *cert. denied sub nom.*, *Brigham City v. Bywater*, 554 P.3d 987 (Utah 2024); *see also, e.g.*, *Transportation All. Bank v. International Confections Co.*, 2017 UT 55, ¶ 17, 423 P.3d 1171 (holding that an appeal was moot because a debtor failed to seek a stay of an order approving a receivership sale). Applying that general principle, we determined in *Bywater* that Brigham City's failure to act to maintain the status quo pending appeal rendered its appeal moot. The issue Brigham City sought to raise on appeal was whether a landowner's conveyance of a portion of his property to the city for the construction of a road terminated the landowner's previous easement over that property. *See Bywater*, 2024 UT App 53, ¶¶ 1–2.

The district court had ruled that the landowner retained an easement allowing him access to the road, and the city appealed. *See id.* ¶ 2. However, "after doing so, [the city] not only took no efforts to stay the ruling, but it also gave [the landowner] a permit to build a concrete 'curb cut' from his property onto [the road]," which he did. *Id.* The landowner argued that the city's actions mooted its appeal. *See id.* ¶ 3.

¶19  In addressing the mootness question, we highlighted the fact that the city had approved the landowner's request for permission to build a curb cut "without any request for stay, formal protest, or effort to preserve the pre-construction status quo." *Id.* ¶ 32 (cleaned up). We also highlighted the fact that the landowner then spent funds completing the project and used the curb cut for eighteen months without restriction. *See id.* ¶ 35. We held that the city's "inaction and actions alike [had] failed to preserve the 'status quo,' thereby rendering [the] appeal moot." *Id.* In light of the authority we cited in support of our holding, we concluded more generally that "our cases establish the principle that an appeal may become moot where the appealing party [does] not use available procedural tools to preserve the status quo." *Id.* ¶ 27 (cleaned up) (citing *Transportation All. Bank*, 2017 UT 55, ¶ 17; *Richards v. Baum*, 914 P.2d 719, 721–22 (Utah 1996); *Kellch v. Westland Mins. Corp.*, 484 P.2d 726, 726 (Utah 1971); *Wasatch County v. Utility Facility Review Board*, 2018 UT App 191, ¶¶ 14, 16, 437 P.3d 406).

¶20  Here, Baum took no actions to preserve the status quo before complying with the district court's order to convey the Property. Baum contends, however, that this should not render his appeal moot because his situation is materially different from those of the appellants in the cases cited above. Specifically, he notes that those appellants complied with *final judgments* without availing themselves of *readily available procedural tools* for preserving the status quo, while Baum complied with an *interlocutory order* for which—he asserts—there was *no readily*

*available procedural tool* he could have used to preserve the status quo. In Baum's words, his decision to close on the Property did not render his appeal moot because "the trial court entered the [order] that required [Baum] to act *prior* to a judgment being entered and while there remained outstanding causes of action to be determined" and, thus, Baum "only had the ability to comply with the interlocutory order and convey [his] non-acquiescence at the time the final judgment took effect."

¶21 We acknowledge that this case presents a unique procedural posture in that Baum was subject to an order demanding his performance prior to his ability to appeal as of right and seek a stay in connection with that appeal. Nevertheless, Baum is mistaken that he lacked procedural tools to preserve the status quo or—at the least—register his non-acquiescence pending his eventual appeal. Indeed, Baum had at least four tools at his disposal.

¶22 First, he could have filed a motion in the district court for a stay of the court's summary judgment order, relying on "the inherent powers of the courts to grant a stay of proceedings." *Lewis v. Moultree*, 627 P.2d 94, 96 (Utah 1981). A court's inherent power to grant a stay of proceedings "is a discretionary power, and the grounds therefor necessarily vary according to the requirements of each individual case." *Id.* But under the circumstances of this case, a stay of reasonable duration upon terms adequate to protect the Boyles' interests would have been within the court's discretion to grant.

¶23 Second, Baum could have filed a petition for permission to appeal the district court's summary judgment order. Under rule 5(a) of the Utah Rules of Appellate Procedure, "[a]ny party may seek an appeal from an interlocutory order by filing a petition for permission to appeal from the interlocutory order with the appellate court with jurisdiction over the case." Thus, Baum was free to seek permission to appeal the court's order via a petition

to the supreme court. *See* Utah Code §§ 78A-3-102(4)(a)(vi), 78A-4-103(3) (together setting forth the supreme court's jurisdiction over interlocutory appeals from general civil actions). Then, upon filing such a petition, Baum could have moved the district court under rule 62(c) of the Utah Rules of Civil Procedure to stay its order requiring specific performance. This rule allows a party to ask the district court "in its discretion" to "suspend" an "injunction" "[w]hen a party *seeks* an appeal from an interlocutory order," not merely when permission to appeal is granted. Utah R. Civ. P. 62(c) (emphasis added). Thus, once Baum filed for permission to appeal the district court's order, he could have also moved the district court to stay its order under rule 62(c). *See Jenco, LC v. Valderra Land Holdings, LLC*, 2025 UT 20, ¶ 24, 572 P.3d 381 (holding that "when an order commands a party to perform an action, like instructing a trustee to reconvey property, the order is injunctive" and rule 62(c) applies (cleaned up)). And in this scenario also, it would have been within the court's discretion to grant an appropriate stay.

¶24 Third, if the district court nevertheless denied a rule 62(c) motion for a stay of the summary judgment order pending the appellate court's consideration of his petition for permission to appeal that order or pending an appeal if one was granted, Baum could have moved the appellate court for such a stay. *See* Utah R. App. P. 8(a)(1) ("A party may move the appellate court for the following relief pending appeal or pending disposition of a petition [for permission to appeal an interlocutory order] . . . : an order suspending . . . injunctive relief.").

¶25 Fourth, if no court had granted him a stay, Baum could have—at a minimum—executed the transfer documents and accepted payment for the Property under protest or with a reservation of rights. Doing so would have demonstrated his effort and desire to maintain the status quo and not acquiesce in conduct that would render any appeal issues moot. *See generally Bywater v. Brigham City Corp.*, 2024 UT App 53, ¶ 32, 548 P.3d 531

(highlighting the appellant's lack of "formal protest" or "effort to preserve the . . . status quo" as reasons for deeming the appeal moot (cleaned up)), *cert. denied sub nom.*, *Brigham City v. Bywater*, 554 P.3d 987 (Utah 2024).

¶26 Finally, we note that the considerations regarding a "shift in the burden of risk" that our supreme court outlined when discussing the "acceptance-of-benefits doctrine" in *Trees* apply fully here. *See Trees v. Lewis*, 738 P.2d 612, 613 (Utah 1987). By accepting the benefits of an order from which he intended to appeal, Baum "accomplishe[d] a significant shift in the burden of risk." *Id.* He exposed the Boyles "to the possibility not only of a possible loss on appeal, but also the potential loss of the benefit [the Boyles] . . . provided to [Baum]." *Id.* Specifically, like the situation with the seller in *Trees*, Baum "has taken . . . [the Boyles'] money which, should we reverse on appeal, [the Boyles] would have to recover from [Baum], who may not be able or willing to refund it." *Id.* Additionally, just as the seller in *Trees* allowed the buyer "to inconvenience himself by moving to the ranch [in that case] and hiring a staff," *id.*, Baum has allowed the Boyles to inconvenience themselves by, for example, moving into the Property and paying mortgage interest for multiple years.

¶27 In sum, as with a party who appeals a final judgment ordering the transfer of real property, a party who anticipates appealing from an interlocutory order for the transfer of real property has procedural tools for preserving the status quo. And the practical considerations of a failure to use such tools are largely the same in each circumstance. Accordingly, we extend the principles announced in prior cases to the circumstances here and hold that Baum's acceptance of the Boyles' money and conveyance of the Property subject to no reservation of rights, protest, or use of available procedural tools to preserve the status quo rendered moot the issues he now seeks to raise on appeal. We therefore lack jurisdiction and must dismiss the appeal. *See State v. Dowhaniuk*, 2025 UT App 100, ¶ 33, 574 P.3d 1000 (stating that

"if the issues for our review on appeal have been rendered moot," then "we lose jurisdiction over the appeal" and "have no choice but to dismiss it").

## CONCLUSION

¶28    Baum's appeal is moot, and we therefore grant the Boyles' motion to dismiss. We award the Boyles attorney fees incurred on appeal and remand the matter to the district court for the limited purpose of calculating those fees.

––––––––––